# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVE LEVENGOOD,** | : | **Civil No. 3:23-cv-00196** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PIER HESS GRAF, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

In 2017, Steve Levengood was convicted by a jury of aggravated assault and simple assault for punching his neighbor, Darnell Pemberton, in the face one time causing him to fall to the ground and sustain a traumatic brain injury. Commonwealth v. Levengood, No. 1365 MDA 2017, 2018 WL 1599803, at *1 (Pa. Super. 2018). The Court of Common Pleas of Lebanon County sentenced Levengood to three to seven years' incarceration on August 23, 2017. Id. Having exhausted his state appeals and post-conviction relief, Levengood has now filed a petition for writ of habeas corpus. (Doc. 1). In his petition, Levengood asserts three arguments that have previously been addressed and rejected by the State courts. First, he alleges that the evidence at trial was insufficient to support his conviction for aggravated assault because the Commonwealth failed to prove the requisite

1

element of malice where he only struck the victim one time. He also alleges two ineffective assistance of counsel claims, arguing first that counsel was ineffective for failing to object to improper bolstering of the credibility of the victim and the quasi-expert testimony from a detective as to the petitioner's guilt and also that trial counsel failed to object to improper burden-shifting when the Commonwealth repeatedly suggested during cross-examination and argument that the petitioner had a duty to prove himself innocent by calling certain potential witnesses to testify.

Levengood's claims were thoroughly considered by the state courts which concluded there was sufficient evidence to convict him of aggravated assault under Pennsylvania law and rejected his efforts to lay the blame for these convictions at the feet of his counsel. After our independent review of the full record of the state court proceedings, and upon consideration of the briefing by the parties, we find that Levengood has failed to raise any claim that rises to a constitutional violation warranting federal intervention. Accordingly, for the reasons set forth below, we recommend that this petition be denied.

## II.    Statement of Facts and of the Case

The underlying state criminal case involves an ongoing acrimonious relationship between neighbors that culminated in a confrontation on the evening of June 27, 2016. The factual background of the case was aptly summarized by the

PCRA court and later quoted by the Pennsylvania Superior Court in its decision affirming the PCRA court's decision. As the court observed:

> Prior to the incident occurring on June 27, 2016, the families of both [Levengood] and Victim were immersed in a hostile relationship. These hostilities first started when the families began living next door to each other in 2010. A dispute regarding the shared driveway began these problems and eventually led to further disputes regarding property lines, barking dogs, pet ducks, intrusive video recordings, and the use of strobe lights. Eventually, both families filed complaints against each other and multiple phone calls to police were made.

> The Cornwall Police Department suggested mediation as the problems persisted, but these efforts eventually failed. Afterward, [Levengood] installed "No Trespassing" and "Private Property" signs that directly faced Victim's home. Victim and his family responded by attempting to cover these signs with decorative flags. [Levengood] and his family responded by placing even more signs that were elevated and more difficult to cover up.

> On the night of June 27, 2016, these ongoing tensions finally resulted in violence. After returning home from work, Victim erected his own no trespassing signs that he installed along the shared property line. As Victim was hammering in the signs, he heard laughing coming from [Levengood's] house. Despite shining a flashlight in the direction of the noise, Victim did not discover its source. At this point, Victim abandoned the sign project and proceeded to park his car for the evening. This included first moving several orange cones that he had placed in the driveway. [Levengood], armed with a flashlight, then approached Victim and engaged him in a heated verbal exchange. Eventually, this exchange became physical when [Levengood] proceeded to shine his flashlight in the eyes of Victim, who responded by swatting the flashlight away from his eyes. After repeating this sequence of actions several times, [Levengood] transferred the flashlight to his non-dominant left hand and proceeded to punch Victim in the jaw. Immediately after receiving the blow to his face, Victim fell backward and struck his head on the asphalt driveway. Despite rendering Victim unconscious, [Levengood] proceeded back to his

home without offering any assistance to Victim. [Levengood's] wife, Tracy Levengood, proceeded to call 911, reported the incident, and requested police assistance.

Police Officer Sean McCarrick of the South Lebanon Police Department responded to the scene. After arriving, Officer McCarrick made the decision to request an ambulance and medical assistance for Victim. This decision was based on the officer's observation of Victim's condition, which include[d] incoherency, excessive bleeding from a head injury, and Victim's inability to walk or speak properly. Victim was transported to Hershey Medical Center where he spent two days in the Intensive Care Unit followed by an additional eight-day stay before he was released. Dr. Justin Chandler, who was charged with the care of Victim, noted that Victim's injuries included a cephalohematoma (a brain bleed), a subarachnoid hemorrhage, and bruising of the brain from the assault. These injuries were all noted as potentially life threatening. Because of these injuries, Victim had to undergo months of therapy to regain his ability to speak and walk properly. Additionally, Victim developed an acute sensitivity to light, which ultimately resulted in Victim losing his job.

Due to a conflict of interest, Chief County Detective Daniel Wright [ ] eventually took over the investigation, relieving Cornwall Borough Police Department. After interviewing [Levengood] and his wife, reviewing the steps of his investigation, and considering the evidence relating to the incident, Chief Wright decided to charge [Levengood] with both Aggravated and Simple Assault.

Commonwealth v. Levengood, 277 A.3d 1170, 2022 WL 1265766 at *1-2 (Pa. Super. Ct. 2022) (quoting PCRA Court Opinion, 5/19/21, at 2-5). Levengood was convicted of aggravated assault and simple assault following a three-day jury trial. Id.

With regard to the testimony at trial, the PCRA court summarized it as follows:

Defendant was represented at trial and on appeal by Attorney Jay Nigrini. Throughout the course of the trial, several witnesses were called to testify about the events that took place on June 27, 2016 and the related investigation into the incident. Chief Wright was called as a witness. He testified that he decided to charge Defendant with both aggravated and simple assault after reviewing all the evidence and steps of the investigation. On cross-examination, Attorney Nigrini questioned Chief Wright extensively about alleged holes in the investigation specifically with respect to the legal issue of mens rea for aggravated assault. At some point, the trial court intervened and provided the jury with the standard jury instruction on that particular issue.

The Defense opened its case by presenting character witnesses. In total, twenty-one (21) individuals were called to provide testimony that [Levengood] had a reputation of being a peaceful and law-abiding citizen. After four of these witnesses testified [the trial court] had the remaining seventeen (17) witnesses stand before the jury while the Commonwealth stipulated that their testimony would provide insight into [Levengood's] good reputation in the community as a peaceful and law[-]abiding citizen. On rebuttal, the Commonwealth offered the testimony of one character witness. This witness, [Officer] Sean McCarrick, had testified earlier in the day as a part of the Commonwealth's case-in-chief since he was the first responding police officer to the scene. However, the Commonwealth had the witness explain to the jury that he was not testifying as a citizen of the Borough of Cornwall, and not as a police officer. He testified that he knew [Levengood] to have a reputation as a violent and non-peaceful person. [Trial counsel] questioned him on cross-examination about his testimony and asked for names of individuals whom he relied upon to form this opinion.

[Levengood] testified on his own behalf. He asserted that Victim was cursing about the Levengood family and this led [Levengood] to approach Victim. [Levengood] alleged that although he may have

shined a flashlight in Victim's face, Victim began swinging his arms at [him], which [Levengood] took as an act of aggression. He then explained that he responded by punching Victim in the face, which caused [Victim] to fall backward and strike his head on the paved driveway. When questioned about the obsessive behavior the [Levengoods] displayed toward [Victim's] family, [Levengood] explained that his wife was responsible for the alleged acts of filming, photographing, and logging the daily activity of the [Victim's] family. [Levengood] also testified that the video taken by his wife was not complete and did not accurately capture the full incident.

(PCRA Court Opinion, Doc. 15-16, at 75-76).

Following his conviction at trial, the trial court sentenced him to an aggregate term of three to seven years of imprisonment. Commonwealth v. Levengood, 277 A.3d 1170, 2022 WL 1265766 at *4. Levengood appealed this conviction, raising two arguments, one of which he raises in the instant petition that there was insufficient evidence to support the jury's verdict as to the aggravated assault charge as the Commonwealth failed to prove that the appellant's action in punching the victim one time in the face established that he intentionally, knowingly, or recklessly caused serious bodily injury. The Pennsylvania Superior Court affirmed the judgment of sentence on April 3, 2018. Commonwealth v. Levengood, No. 1365 MDA 2017, 2018 WL 1599803 (Pa. Super. Ct. Apr. 3, 2018). In rejecting his argument that there was insufficient evidence to support the aggravated assault conviction, the Superior Court applied the standard of review set out in Commonwealth v. Thomas, 988 A.2d 669, 670 (Pa. Super. 2009), appeal denied, 4

A.3d 1054 (Pa. 2010), which requires a reviewing court to determine "whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt," without re-weighing the evidence and resolving all doubts in favor of the fact-finder "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." Id. In applying this standard, the Superior Court held that there was sufficient evidence from which the jury could conclude that the petitioner recklessly caused serious bodily injury to the victim. As the Superior Court explained:

> A person will be found guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S.A. § 2702(a)(1). The term" serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm . . . the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life." Commonwealth v. Burton, 2 A.3d 598, 602 (Pa. Super. 2010) (en banc) (internal citation omitted), appeal denied, 32 A. 2d 1275 (Pa. 2011).
>
> Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was sufficient evidence from which a jury could conclude that appellant recklessly caused serious

bodily injury to the victim. The Crimes Code defines reckless conduct as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

In Commonwealth v. Smith, 956 A.2d 1029 (Pa. Super. 2008), appeal denied, 989 A.2d 917 (Pa. 2010), this court recognized that a heightened degree of recklessness, akin to malice in a murder case, is required for aggravated assault convictions:

> To prevail on a theory of recklessness [in an aggravated assault prosecution], the Commonwealth must show an assailant's recklessness rose to the level of malice, a crucial element to sustain a conviction for aggravated assault.

> Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; **rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury**. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such

8

that one could reasonably anticipate death or serious
bodily injury would likely and logically result.

The circumstances showing intent to cause serious bodily
injury apply with equal force to prove recklessness to a
degree that one would reasonably anticipate serious bodily
injury as a likely and logical result.

Id. at 1036-1037 (internal citations omitted; emphasis added).

This court has previously addressed similar situation in Burton. In
Burton, an *en banc* panel of this court was faced with determining
whether the Commonwealth presented sufficient evidence to support a
conviction for aggravated assault where defendant provoked an
altercation with the smaller, older victim and landed a single punch to
the victim's head. Burton 2 A.3d at 599-601. The victim in Burton
sustained serious and permanent injuries to his brain and spine as a
result of this assault. Id. The Burton court found that there was
sufficient evidence that defendant intentionally or knowingly
proceeded in a manner that manifested an extreme indifference to the
value of the victim's life, thus supporting his conviction for aggravated
assault. Id. at 602-603. The Burton court based this decision, in part, on
the fact that defendant as much larger and stronger than the victim; that
"the victim was caught unaware" by defendant's single blow to his
head; and defendant demonstrated an utter lack of remorse or concern
for the victim as he lay unconscious in the street by making several
"gloating remarks." Id. at 603-604.

Similarly, the testimonial and video evidence presented in this matter
established that during the course of a verbal argument, appellant
blindsided the victim with a punch to the jaw after shining a flashlight
"in [his] eyes" "less than an inch from [his] face[,]" ostensibly blinding
him. (Notes of testimony, 6/12/17 at 34-35, 40-42, 6/13/17 at 221-222.)
As the trial court recognized in its opinion, "[t]he fact that [a]ppellant
was shining a flashlight in the victim's fact provides support for the
inference that the victim was caught unaware and unprepared for the
blow to the head . . . ." (See trial court opinion, 10/13/17 at 9 (citation
omitted).) This assault rendered the victim unconscious and caused him

to fall back and strike his head on the asphalt driveway. (Notes of testimony, 6/12/17 at 35-36; 6/13/17 at 221-222.)

The Commonwealth introduced video footage at trial that was taken by both appellant's wife (hereinafter, "Levengood Video") and the victim's security camera (hereinafter, "Pemberton Video") depicting this assault. (See notes of testimony, 6/12/17 at 37, 46, 48.) Appellant testified at trial that the Levengood Video depicts him shining a light in the victim's fact, hitting him in the face, and then immediately turning around and telling his wife to call 911 "to get the police there." (Notes of testimony, 6/13/17 at 221-222, 246.) Likewise, the record establishes that the Pemberton Video depicts appellant walking toward the victim, initiating a verbal argument, and shining a flashlight very close to the victim's fact. (See notes of testimony, 6/12/17 at 39-40.) This video further demonstrates that after the victim admittedly attempted to swat the flashlight out of his face with an open hand, appellant shifted the flashlight to his left hand and immediately struck the victim with his dominant right fist. (Id. at 42, 108; notes of testimony, 6/13/17 at 221, 247-248.)

Additionally, like in Burton, the evidence establishes that there was a significant size difference between appellant and the victim in this matter. Lebanon City Police Chief Daniel Wright testified that appellant specifically denied feeling afraid or threatened by the victim and that according to PennDOT information, appellant is 5 inches taller than the victim and, in Chief Wright's estimation, 40 to 50 pounds heavier. (Notes of testimony, 6/13/17 at 155-156.) Appellant, in turn, testified that he is 5-feet, 11-inches tall, weighed approximately 195 pounds at the time of the assault, and admitted that he is significantly larger than the victim. (Id. at 249-50.) Appellant also acknowledged that he did not render aid to the victim as he lay unconscious on the driveway because they "were on bad terms" and that "he figured he would have been up by now." (Id. at 221-222.) The record further establishes that no ambulance was called to the scene until after Officer Sean McCarrick arrived and determined that the victim was bleeding from his head, was incoherent, and could not speak or walk properly. (Id. at 85-90.)

The evidence further establishes that the victim did, in fact, sustain serious bodily injury as a result of this assault. The victim was hospitalized for "almost two weeks" following this assault and had to undergo speech and physical therapy in order to learn how to speak properly and walk again. (Notes of testimony, 6/12/17 at 86-87.) The victim testified that he continues to suffer from severe migraines due to light sensitivity and that this condition caused him to lose his job. (Id. at 88-93.) Dr. Justin Chandler, the victim's supervising physician, testified that the victim remained in the Intensive Care Unit at Milton S. Hershey Medical Center for two days and suffered multiple traumatic brain injuries as a result of this assault, including a subarachnoid hemorrhage and a smaller contusion, or bruising of the brain. (*Id.* at 126-127). Dr. Chandler opined that appellant's injuries are consistent with the victim's receiving a blow to the head and then falling backwards, striking his head on the asphalt. (*Id.* at 128-129). Dr. Chandler further noted that, in his professional opinion, the victi's injuries constituted a serious bodily injury in that they caused protracted loss or impairment of bodily function. (*Id.* at 136-137).

Based on the foregoing, we find no error on the part of the trial court in concluding that appellant recklessly caused serious bodily injury to the victim under circumstances manifesting extreme indifference to the value of human life. Accordingly, appellant's claim that there was insufficient evidence to sustain his conviction for aggravated assault must fail. See, e.g., Burton, 2 A.3d at 599.

Levengood, 2018 WL 1599803 at *2-4. Based on this finding, and the rejection of Levengood's other argument on direct appeal, the Superior Court affirmed Levengood's judgment of sentence on April 3, 2018. Id. The Pennsylvania Supreme Court then denied any further review. Commonwealth v. Levengood, 194 A.3d 1036 (Pa. 2018).

With his direct appeals exhausted, Levengood then began to seek relief under Pennsylvania's Post-Conviction Relief Act (PCRA). He filed a counseled PCRA

petition on September 6, 2019, and an evidentiary hearing was held on November 24, 2020, at which testimony from trial counsel and his wife and daughter was presented. (Doc. 15-15). The PCRA court dismissed Levengood's petition and he appealed to the Superior Court. On appeal, among other arguments, the Superior Court considered the ineffective assistance of counsel claims he advances in the instant petition.  In addressing these claims in his PCRA petition, the Superior Court assessed the effectiveness of trial counsel under the standard set in Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009). In affirming the dismissal of the PCRA petition, the Superior Court explained:

> To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." Id. This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. Id. at 533. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. Commonwealth v. Martin, 5 A.3d 177, 183 (Pa. 2010).

Commonwealth v. Levengood, 277 A.3d 1170, 2022 WL 1265766 at *3. The Superior Court then concluded that there were no legal errors or abuse of discretion in the PCRA court's opinion denying post-conviction relief and adopted the opinion

of the trial judge that trial counsel was not ineffective for failing to object to Chief

Wright's testimony regarding his decision to charge Levengood with aggravated

assault and did not provide his personal opinion of Levengood's guilt and concluding

that Levengood could not prove he was prejudiced by trial counsel's failure to object

to the prosecutor's closing argument where he requested sidebar to insure that the

jury instructions included language about the burden of proof. Thus, the Superior

Court affirmed the order denying Levengood's post-conviction relief. (Id.)

Having exhausted his avenues of post-conviction relief in state court,

Levengood filed this petition for writ of habeas corpus. (Doc. 1). In this petition,

Levengood again advances his claim that there was insufficient evidence to support

his aggravated assault conviction and renews two of the ineffective assistance of

counsel claims which were previously considered, and rejected, by the state courts

contending that: (1)  his trial counsel was ineffective for failing to object and move

for a mistrial when Chief Wright allegedly testified that he believed Petitioner was

guilty of aggravated assault; and (2) counsel failed to object to impermissible burden

shifting when the Commonwealth argued that the jury should reject Petitioner's

testimony because his wife did not testify.

Under the doubly deferential standard which we are enjoined to apply to these

previously adjudicated claims of ineffective assistance of counsel, and finding no

error in the state court's assessment of the sufficiency of the evidence supporting

Levengood's conviction, we find that the petitioner has failed to meet the exacting benchmarks demanded for habeas corpus relief based upon these claims. Therefore, for the reasons discussed below, we will deny this petition.

## III.  <u>Discussion</u>

### A. <u>State Prisoner Habeas Relief–The Legal Standard.</u>

#### (1) <u>Substantive Standards</u>

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State;
> ..........
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy rigorous substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct that violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir. 2004).

## (2) Deference Owed to State Courts

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal

rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338–39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139–40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734–35 (1990). This principle applies

to state court factual findings made both by the trial court and state appellate courts.

Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility

determinations made by the state courts, and we must give equal deference to both

the explicit and implicit factual findings made by the state courts. Weeks v. Snyder,

219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state

court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be
> overturned on factual grounds unless it was objectively unreasonable in
> light of the evidence presented in the state proceeding. Miller–El v.
> Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We
> must presume that the state court's determination of factual issues was
> correct, and the petitioner bears the burden of rebutting this
> presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
> Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge–Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of

review, federal courts may only grant habeas relief whenever "[o]ur reading of the

PCRA court records convinces us that the Superior Court made an unreasonable

finding of fact." Rolan, 445 F.3d at 681.

### (3) Ineffective Assistance of Counsel Claims

These general principles apply with particular force to habeas petitions that

are grounded in claims of ineffective assistance of counsel. It is undisputed that the

Sixth Amendment to the United States Constitution guarantees the right of every

criminal defendant to effective assistance of counsel. Under federal law, a collateral

attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must

demonstrate that he was prejudiced by counsel's errors." Id. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under Strickland. As the Supreme Court has observed a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). This doubly deferential standard of review applies with particular force to strategic judgment like those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., at 688, 104 S. Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689, 104 S. Ct. 2052. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id., at 690, 104 S. Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). The deference which is owed to these strategic choices by trial counsel is great.

> Therefore, in evaluating the first prong of the Strickland test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. The presumption can be rebutted by showing "that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound."

Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009) (quoting Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 2005)) (footnote omitted).

It is against these legal benchmarks that we assess Levengood's petition.

21

B. **This Petition Should Be Denied.**

Levengood's petition argues three claims that were thoroughly considered and rejected at the state level. He alleges first that the evidence was insufficient to support his conviction for aggravated assault and also alleges failures of trial counsel, which he contends violated his right to counsel under the Sixth and Fourteenth Amendments. Under the deferential standard of review that applies in this case, we find there was no error in the state court's holdings on these issues and will deny the petition.

### 1. The Petitioner's Sufficiency of the Evidence Claim Fails.

At the outset, Levengood faces an exacting burden of proof in advancing a claim that the evidence was insufficient to sustain the verdict of aggravated assault. As we have observed:

> In Jackson v. Virginia, the United States Supreme Court held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . Moreover, the rule announced in Jackson "requires a reviewing court to review the evidence 'in the light most favorable to the prosecution.' " Id. (quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781). What this means is that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 133, 130 S.Ct. 665 (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

Hawk v. Overmyer, No. 3:16-CV-135, 2019 WL 1187356, at *5 (M.D. Pa. Jan. 17, 2019), report and recommendation adopted sub nom. Hawk v. Overmeyer, No. 3:16-CV-135, 2019 WL 1163830 (M.D. Pa. Mar. 13, 2019).

Levengood argues that the Commonwealth's evidence was insufficient to sustain his conviction for aggravated assault because the Commonwealth did not prove that he possessed the requisite mental state, specifically malice, to be guilty of the offense. Thus, he argues his conviction on this charge violated his right to due process of law. The Third Circuit has summarized that, "[u]nder Pennsylvania Law, a person is guilty of aggravated assault if he 'attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.'" Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1997) (quoting 18 Pa. Cons.Stat. Ann. § 2702(a)(1)(West Supp.1997)).

Here, it is uncontested that the victim did, in fact, suffer serious bodily injury in the form of multiple traumatic brain injuries which required intensive care treatment and permanent physical impairment which resulted from the petitioner's actions. The petitioner concedes this fact, but argues that there was simply no evidence that he had the requisite intent to cause these serious injuries, since he delivered only a single punch and the injuries resulted primarily from the victim falling backwards and hitting his head on the asphalt driveway. He relies upon an

23

absence of Pennsylvania Supreme Court precedent finding that one punch shows malice. But the petitioner also acknowledges the factors cited by the Pennsylvania Supreme Court in Commonwealth v. Alexander, 383 A.2d 887 (Pa. 1978), which it highlighted as guideposts in determining whether the requisite malice was present, including, "1) a size differential between the defendant and victim, 2) whether something prevented the defendant from escalating the attack, 3) whether the defendant used a weapon, and 4) statements before, during, or after the attack which might provide evidence of the defendant's intent." (Doc. 1, ⁋ 41) (citing Alexander at 889).

While the Supreme Court in Alexander held that these factors were not present and thus did not support a conviction for aggravated assault, in Commonwealth v. Burton, in which the defendant had delivered a single blow to the victim that resulted in significant permanent injuries, the Pennsylvania Superior Court relied upon Alexander in applying similar factors and concluded that the a single blow delivered to the head of the victim did support an aggravated assault conviction. 2 A.3d 598, 599 (Pa. Super. 2010). In Burton, the Pennsylvania Superior Court confirmed that:

> When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm. As we noted in *Patrick,* the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life. *Id.* at 1046. This Court concluded that a sufficient *prima facie* case of such intent had been produced in that case to permit the crime of aggravated

assault to be submitted to the jury. We ruled that defendant's reckless indifference was substantiated by the "surprise attack" on an "unsuspecting victim" since the punch to the head, which is a vital body part, caused the man to fall "without reflexive protection." *Id.* at 1047.

Com. v. Burton, 2010 PA Super 138, 2 A.3d 598, 602–03 (2010) (citing Com. v. Patrick, 2007 PA Super 289, 933 A.2d 1043 (2007)). The Superior Court concluded that the following factors established the defendant's intent to cause serious bodily injury:

> First, Appellant was significantly stronger and larger than [the victim]. Additionally, Appellant was ten years younger than the fifty-one-year-old victim. *See* N.T. Trial, 4/10/08, at 71. Appellant's actions and statements before and after the assault confirm that he intended to inflict the victim's injuries. Appellant aggressively initiated a confrontation with [the victim], whose response was limited to stating that he was not afraid of him. After the attack, Appellant was viewed "sitting in the middle of the street saying I got you, I got you, I told you I was going to get you" while "smiling and laughing." N.T. Trial (Waiver), Vol. 1, 4/10/08, at 41, 46. While Appellant was making these remarks, the victim was unconscious, his eyes were rolled back into his head, blood was coming from his nose, his head was bloody, and he was involuntarily twitching. Appellant's gleeful remarks upon viewing the victim in that condition indicate that Appellant had intended that the victim suffer the resultant harm.
>
> Additionally, the evidence creates a reasonable inference that although [the victim] knew that he and Appellant were going to engage in a fistfight, the victim was unprepared when he actually was struck. Mr. Moody specifically testified that "they," meaning both [the victim] and Appellant, had asked him to move away from the vicinity. Mr. Moody continued that he had just started to initiate that maneuver when he heard the victim being struck. Specifically, Mr. Moody testified, "**when I went to move out of the way** to turn around ... that's when I heard [the victim] hit the ground." *Id.* at 20 (emphasis added). This testimony supports that Appellant did not wait until Mr. Moody exited from

> harm's way and that the victim was unprepared for the blow in that he
> was punched while waiting for his friend to reach a safe vantage point.
> The victim then fell headfirst to the pavement without the benefit of a
> reflexive action to protect against the fall. Indeed, on appeal, Appellant
> acknowledges that the nature of the punch was preemptive and that [the
> victim] had his hands behind his back when Appellant landed his blow.
> Appellant's brief at 8.

Com. v. Burton, 2010 PA Super 138, 2 A.3d 598, 603–04 (2010) (emphasis in
original).

The petitioner argues none of the cases in which the Pennsylvania Superior
Court has affirmed one-punch aggravated assault cases are similar to his case, and
attempts to distinguish Burton. But, viewing the evidence in the light most favorable
to the prosecution in applying these factors, we find that a reasonable trier of fact
could have concluded that Levengood had the requisite intent to support an
aggravated assault charge. At the outset, the petitioner concedes that he caused
serious bodily injury to the victim but argues that it was not the punch itself that
caused the injury and brain damage was not the natural and probable result of one
punch to the victim's face. (Doc. 1, ¶¶ 44-47). However, the evidence relied upon
by the Superior Court in affirming his judgment of sentence is aligned with the
guidance in Burton.

First, the size differential between the victim and the defendant is analogous
to Burton, where the petitioner testified he was significantly larger than the victim,
(Doc. 15-3, at 249-50), and Lebanon City Police Chief Daniel Wright testified that

26

the petitioner forty to fifty pounds heavier than the victim. (Id., at 155-56). Moreover, the conduct of the petitioner before, during, and after the incident also demonstrates the requisite mental state to support the conviction. While the petitioner argues that he never "sucker punched" the victim, as the Superior Court noted, the video evidence could be viewed as demonstrating that the victim was caught off guard by the punch. Indeed, the video showed Levengood walking toward the victim, initiating a verbal argument, and shining a flashlight directly in the victim's face before striking him with his right fist. (Doc. 15-2, at 39-43). Moreover, Levengood's indifference to the victim following the punch also weighs in favor of malice, where he allegedly told the police that the victim "fell like a wet noodle," and "dropped like a brick," (Doc. 15-3, at 164), but testified that he never called for an ambulance, and when asked whether he ever walked over to check on the victim stated, "absolutely not." (Doc. 15-3, at 252-54). Indeed, the officer who responded to the scene, Officer Sean McCarrick, testified that the petitioner never checked on the victim's condition, stated he did not know if he needed an ambulance, and did not render any type of aid to the victim. (Id., at 93-94). And, although the petitioner argues that the injuries to the victim were not as apparent as those in Burton, Officer Sean McCarrick testified that the victim was bleeding from the head, was unable to speak coherently and was essentially unresponsive, was stumbling, and clearly had a severe head injury. (Tr. 15-3, at 89-90).

The Superior Court applied the proper standard in assessing each of these factors as being indicative of the requisite recklessness demonstrating extreme indifference to the value of human life to support an aggravated assault conviction. Similarly, the Superior Court's factual determinations were not unreasonable and, on the contrary, find that there was sufficient evidence in the record to support the conviction. Accordingly, we find no due process violation that would require federal court intervention.

## 2. The Petitioner's Ineffective Assistance of Counsel Claims Were Properly Rejected by the State Courts

The petitioner also alleges trial counsel was ineffective in that: (1) counsel failed to object and move for a mistrial when Chief Wright allegedly testified that he believed the petitioner was guilty of aggravated assault; and (2) counsel failed to object to impermissible burden shifting when the Commonwealth argued that the jury should reject the petitioner's testimony because his wife did not testify.

As we have noted, we employ a doubly deferential standard in examining habeas petitions raising ineffective assistance of counsel, showing deference to the decisions of state courts unless they are either "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or "based upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2), and in assessing whether counsel's performance was constitutionally

deficient, "[t]here is a 'strong presumption' that counsel's performance was reasonable." Jermyn, 266 F.3d at 282 (quoting Berryman, 100 F.3d at 1094).

Applying these guideposts, we conclude that Levengood's claims of ineffective assistance of counsel are unavailing.

### 1. Failure to Object to Chief Wright's Testimony

Turning first to Levengood's assertion that his trial counsel was ineffective in failing to address the testimony of Chief Wright regarding the aggravated assault charge, our review of the trial testimony and the PCRA proceedings reveals that the petitioner mischaracterizes the testimony of Chief Wright on a number of scores.

The petitioner specifically argues that trial counsel was ineffective in failing to object and move for a mistrial when Chief Wright testified to the following at trial:

> Q.    Now, Chief, ultimately the charging determination was yours and you chose to charge on Aggravated Assault; is that fair?
>
> A.    I did.
>
> Q.    Why?
>
> A.    I chose to file the Aggravated Assault charges based on several reasons: One, was the extent of the injuries. I believe [the victim] suffered serious bodily injury as a result of the assault.
>
> There was also some factors taken into consideration upon reviewing the video. I did not observe an aggressive act by [the victim] against Mr. Levengood. When you also watched the video too, you see [the victim] had had a light shined in his eyes several times. It was dark, it

> was night. And the punch that was thrown was a pretty quick punch. I think based on the circumstances, he was defenseless and took a full punch from a man much heavier than him causing him to fall and hit his head.

(Doc. 15-3, at 170). The petitioner takes issue with this testimony, arguing that "the lead detective, who claimed decades of experience, may not testify that he believed the Commonwealth's version of events and that the defendant was guilty." (Doc. 1, ₱ 55). The petitioner contends that this testimony constituted improper bolstering of Commonwealth witnesses by the prosecution since trial counsel "appears to have purposefully introduced evidence that officials in the District Attorney's Office believed that Appellant was guilty of Aggravated Assault." (Id., at 44). Alternately, the petitioner claims that the testimony of Chief Wright amounted to expert testimony as to his guilt, which is impermissible in Pennsylvania and under federal law.

In applying the doubly deferential standard of review, we first look to the decisions of the state courts, deferring to these decisions unless they are either "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or "based upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2). On May 18, 2021, the Court of Common Pleas of Lebanon County issued an opinion addressing Levengood's ineffective

assistance of counsel claims raised in his PCRA petition. In rejecting the argument

Levengood renews in the instant petition, the trial court explained:

> Defendant first argues that trial counsel was ineffective for failing to object to certain parts of testimony given by Chief Wright. Specifically, Defendant takes issue with a portion of the testimony in which Chief Wright detailed the reasons behind the charging decisions. He claims that parts of the testimony amounted to improper bolstering and therefore Trial Counsel should have objected.

> There are two circumstances in which improper bolstering can occur: "(1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witness's testimony." Commonwealth v. Hartley, 621 A.2d 1023, 1026 (Pa. Super. 1993), citing Commonwealth v. Reed, 446 A.3d 311, 314 (1982).

> . . .

> Defense Counsel choose [sic] not to object to this particular line of questioning or Chief Wright's responses. At the evidentiary hearing, Attorney Nigrini explained two reasons why he did not object. First, he stated that he did not believe that the testimony was objectionable in the first place. In his opinion, Chief Wright was providing his reasoning for the charging decision. Attorney Nigrini did not believe that Chief Wright was offering improper expert opinion testimony that Defendant was guilty or that he was bolstering the veracity of the Victim's testimony. Second, Attorney Nigrini explained that he choose [sic] not to object as a matter of trial strategy. Attorney Nigrini stated that part of his trial strategy was attempting to show to the jury that the Commonwealth rushed to charge Defendant with Aggravated Assault without knowing all the facts. By not objecting during the Commonwealth's direct examination of Chief Wright, Attorney Nigrini preserved the opportunity to cross-examine Chief Wright and further explore his theory that the Commonwealth had charged Defendant with Aggravated Assault without proper investigation.

Moreover, the Commonwealth alleges that this particular testimony from Chief Wright was cumulative and did not provide any information not already known by the jury. Chief Wright explained to the jury what transpired between Defendant and Victim and included his rationale for the charging decision. He did not comment on the mens rea of Defendant and did not provide any testimony as to whether he believed the Defendant was guilty of Aggravated Assault.

Given this testimony by Chief Wright and Attorney Nigirini's [sic] testimony regarding trial strategy, it was reasonable that defense counsel did not object during the testimony at issue. Chief Wright was testifying as to the reasons why he chose to charge the Defendant in the manner he did. Because testimony about this reasoning was key to the Defense's theory of the case, it was reasonable that Attorney Nigrini would refrain from objecting. In doing so, he preserved the ability to question the witness and explore potential holes that could have aided the defense in disproving the prosecution's case. His testimony did not support the veracity of the victim, and instead only was used to explain the reasoning behind the Commonwealth's charging decision.

Additionally, it was not improper to refrain from objecting because the jury already knew about the injuries sustained by Victim. The testimony regarding Victim's injuries was cumulative because the jury had already been presented with evidence about Victim's injuries and Chief Wright's testimony did not include any facts about the incident which were not already known by the jury. For these reasons, Trial Counsel's decision to refrain from objecting to Chief Wright's testimony was not ineffective assistance of counsel because had a reasonable strategy that could have potentially aided the defense, Chief Wright never bolstered the testimony of any other witnesses, and was not improper because the facts to which he testified were already known to the jury.

Commonwealth v. Levengood, 277 A.3d 1170, 2022 WL 1265766 at *7-9; (Doc.

15-16, at 81-84).[1] The Superior Court then concluded that there were no legal errors

---

[1] The Superior Court adopted the decision of the Court of Common Pleas of Lebanon County Pennsylvania rejecting the petitioner's PCRA petition without an in-depth

or abuse of discretion in the PCRA court's opinion denying post-conviction relief and adopted the opinion of the trial judge.

The petitioner concedes that the state court applied the correct standard for bolstering but argues that the trial court's decision on this issue was based upon an unreasonable determination of the facts since "the prosecution asked the Chief of County Detectives to provide his personal assurances that the defendant was guilty of aggravated assault, and the witness also testified that other officials in the District Attorney's Office agreed with this conclusion." (Doc. 1, ¶ 65). We disagree. In fact, in our view, it is the petitioner that mischaracterizes the testimony of Chief Wright. As the respondent points out, the petitioner's argument conflates the decision to charge a defendant with a crime with the ultimate guilt of the defendant as to that charge. Here, the prosecution asked Chief Wright to explain his decision to charge the defendant with aggravated assault but never addressed the issue of whether he was ultimately guilty of the crime. Indeed, as the trial court pointed out, Chief Wright never opined as to whether Levengood possessed the requisite *mens rea* to be guilty of aggravated assault, rather reciting evidence that had already been presented to the jury regarding the circumstances surrounding the incident which led him to bring the

---

discussion of the legal or factual issues. The more detailed discussion by the trial court was attached to the decision of the Superior Court, cited above, as well as the appellant's brief in support of the PCRA appeal which is part of the record in this case.

aggravated assault charge, including what was shown in the video of the altercation as well as the extent of the injuries of the victim that were already known to the jury.

As to the petitioner's argument that this testimony amounted to improper expert testimony as to his guilt, he argues that the state court never addressed this argument directly. But the state court's opinion does state that trial counsel's decision not to object was a reasonable strategy based on trial counsel's testimony that he did not believe the testimony of Chief Wright was an improper expert opinion that the defendant was guilty. We agree. At the outset, we note that the petitioner concedes that the Commonwealth did not proffer Chief Wright as an expert witness, despite arguing that the prosecution's questions regarding his qualifications and experience effectively implied that he was one. The petitioner also cites to caselaw regarding impermissible lay witness testimony which is governed by Federal Rule of Evidence 701. As the Third Circuit has explained:

> Rule 701(b)'s helpfulness requirement mandates the exclusion of "testimony where the witness is no better suited than the jury to make the judgment at issue."[11] Fulton, 837 F.3d at 293 (quoting United States v. Meises, 645 F.3d 5, 16 (1st Cir. 2011) (internal quotation marks omitted)). A case agent's testimony may not "simply dress[ ] up argument as evidence." Id. (quoting Meises, 645 F.3d at 17). Testimony may be so characterized when a witness "infer[s] [the defendant's] roles not from any direct knowledge, but from the same circumstantial evidence that was before the jury—effectively usurping the jury's role as fact-finder." Id. (quoting Meises, 645 F.3d at 16).

United States v. Jackson, 849 F.3d 540, 554 (3d Cir. 2017). In our view, whether as a purported expert or lay witness, the trial court properly concluded that trial counsel was reasonable in his view that the testimony of Chief Wright simply was not an opinion on the petitioner's guilt. Indeed, Chief Wright's brief testimony regarding why he chose to charge the petitioner with aggravated assault provides no opinion on his ultimate guilt, but rather lists the evidence, which was already within the knowledge of the jury, that weighed in favor of the charge.

But, more importantly, applying a "'strong presumption' that counsel's performance was reasonable," Jermyn, 266 F.3d at 282 (quoting Berryman, 100 F.3d at 1094), we also agree with the state court that trial counsel's decision not to object to the testimony of Chief Wright was based upon a reasonable trial strategy. Following the direct examination of Chief Wright that is challenged by the petitioner, trial counsel Nigrini cross-examined him regarding the decision to charge him with aggravated assault.

As trial counsel Nigrini testified at the PCRA hearing:

A large majority of my Cross-Examination of Detective Wright was to highlight that he really did not at the time of the filing of the charges know or even ask what my client's intentions were in terms of intending to cause serious bodily injury upon [the victim].

(Doc. 15-15, at 28). Attorney Nigrini's cross-examination of Chief Wright at trial demonstrates this strategy:

Q.    Mr. Levengood indicated to you that when he walked over to Mr. Pemberton it was to speak to him, correct?

A.    He said he had enough. He was – he had enough of [the victim] muttering things under his breath about his family.

Q.    So when he, Mr. Levengood, said that, did you then ask Mr. Levengood "did you intend when you walked over there to assault Mr. Pemberton?"

A.    I didn't ask him that specifically. But I do have an annotation in my report that he believed it would just be a yelling match initially.

Q.    You would agree with me that intent, state of mind is a necessary element to those charges?

[Counsel for the Commonwealth]    Your Honor, I'm going to object at this point. It's calling for a legal conclusion. It's either the intent to cause serious bodily injury or recklessly casting aside the fact that serious bodily injury could result from your actions.

[Counsel for the Defendant]    Your Honor, Detective Wright was asked a question why charges of this nature was filed. He gave an explanation, which I'm entitled to follow-up on.

(Doc. 15-3, at 187-88). Based on the objection of counsel for the Commonwealth, the court read the jury the aggravated assault charge to "clear the air" with regard to the intent element and trial counsel went on to continue questioning Chief Wright regarding whether all the elements of the crime were part of his questioning of Mr. Levengood prior to him being charged. (Id., at 188-90).

The PCRA testimony of trial counsel that his decision not to object to the testimony of Chief Wright about his decision to charge the petitioner with

aggravated assault based on his sound trial strategy to highlight that the charges were brought based on an incomplete investigation of all the elements of the crime is supported by the trial transcript of the cross-examination of Chief Wright. Thus, the state court did not misapply Strickland in determining that trial counsel's decision not to object to this testimony was based upon a sound trial strategy, since, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Knowles, 556 U.S. at 124. Indeed, "[a]s a general rule, 'trial strategy is a matter best left to counsel and [ ] a defendant is not entitled to relief simply because the strategy is unsuccessful.'" Slocum v. DelBaso, No. CV 16-5961, 2019 WL 2144460, at *18 (E.D. Pa. Feb. 4, 2019), report and recommendation adopted sub nom. Slocum v. Philadelphia Dist. Att'y Off., No. CV 16-5961, 2019 WL 2137728 (E.D. Pa. May 16, 2019). There was no error here.

### 2. *Failure to Object to Improper Burden-Shifting by the Commonwealth*

We likewise find the state court's rejection of Levengood's complaints regarding counsel's failure to object to alleged improper burden-shifting on behalf of the Commonwealth was both legally and factually sound. The petitioner argues that trial counsel was ineffective for failing to object to the Commonwealth's repeated focus, during cross-examination and closing arguments, on the fact that Levengood's wife did not testify. The trial transcript reveals the following exchanges between Levengood and the prosecutor:

Q.      Okay. Again the day of the punch, according to your own written log, you take two of those "No Trespassing" signs and you put higher, bigger ones up?

A.      My wife did.

Q.      Is she here to testify for you today?

A.      She is here today.

Q.      Is she going to testify?

A.      No, she is not.

(Doc. 15-3, at 235). The prosecutor again mentioned Levengood's wife not testifying later in the exchange:

Q.      And again, at no point did you or your wife tell [the victim] that you were filming him, right?

A.      I don't know what was said, I wasn't there.

Q.      Did you ever tell him?

A.      No. I didn't know until later.

Q.      So your wife chose to do this on her own?

A.      That's correct.

Q.      Again, she's not going to testify for you?

A.      That's correct.

(Id., at 240). The prosecutor again mentioned Levengood's wife not testifying during closing argument:

Let's talk about his wife's testimony. You can't. She didn't testify. Now, we have an ability to subpoena witnesses and bring them into Court just as Defense does, and you saw that because they called, I believe 21 in total character witnesses. They took that step. And you heard Mr. Levengood testify, my wife did that, my wife recorded that, that was my wife. You would expect then that if his version of events were true, if those threats were made, those comments were made, that [the victim] swung first, the one person walking the face of the planet that would want to come into Court and stand up and say that happened would be his wife. You expect that. She sat here. She's in the courtroom right now. She had nothing to say to you from the witness stand. Consider that.

(Doc. 15-3, at 28-29).

The petitioner argues these comments amounted to improper burden-shifting on behalf of the Commonwealth. Indeed, it is well-settled that, in Pennsylvania, the defendant in a criminal trial has no burden to present evidence or testify and such burden-shifting inferences are improper "if the language used by the prosecutor is intended to create for the jury an adverse inference from the failure of the [witness] to testify." Commonwealth v. Clark, 710 A.2d 31, 39 (Pa. 1998). The state court acknowledged this standard and that "[t]he Commonwealth clearly teetered on the line when it came to these comments," since "it does appear that these comments were questionable." Commonwealth v. Levengood, 277 A.3d 1170, 2022 WL 1265766 at *10; (Doc. 15-16, at 87). But, in rejecting this argument in the petitioner's PCRA petition, the state court properly focused on the conduct of trial counsel in determining the ultimate issue of whether his performance was deficient

and concluded that it was reasonable for trial counsel not to object to the statements since he "took extra steps to ensure a fair proceeding by requesting a sidebar prior to the reading of jury instructions." Id. Thus, the PCRA court concluded, "[t]he decision to refrain from objecting during closing was reasonable because there was a clear strategic reason for doing so and trial counsel was not required by Pennsylvania rules to make the objection." Id. at *11.

At the PCRA hearing, trial counsel explained why the petitioner's wife, Tracy Levengood, was not called to testify:

> It was also a concern of mine and certainly a concern of Mr.
> Levengood's that his wife is a bit hotheaded and could be a liability on
> the witness stand based upon her demeanor and the way she presents
> herself in describing what happened. Mr. Levengood was the calmer of
> the two, which was evident in our trial prep meetings. So a decision was
> made based on a consultation with Steve at trial that we were not going
> to call her.

(Doc. 15-15, at 11).

When further questioned, trial counsel provided sound strategic reasons for not to object to the statements by the Commonwealth regarding Levengood's wife not testifying. As to his decision not to object to the comments by the Commonwealth on cross-examination, trial counsel testified that he did not object because he did not think the questions were objectionable "[b]ecause that had no bearing on whether or not Mr. Levengood, as the judge would point out in his jury instructions, had any burden of proof whatsoever. We did not need to call any

particular witnesses." (Doc. 15-15, at 12). Similarly, when asked at the PCRA

hearing why he did not object to the Commonwealth's comments in closing

argument regarding Levengood's wife not testifying, trial counsel stated:

> A.    I lodged that at – prior to instructions to the jury, we went over to the sidebar. I brought that to the Court's attention and I wanted to make sure it was crystal clear that we had no burden of calling any witnesses, including his wife. The Judge suggested that is part of his standard charge and he would make sure that would be addressed.
>
> Q.    So there was no special caution? You didn't request any kind of special cautionary instruction?
>
> A.    That was what I brought to the Court's attention and the Court indicated it was part of his standard charge and would be making certain that the jury understood the burden of proof and it was not the Defendant's burden to call any witnesses.
>
> Q.    Which is one of the standard instructions; correct?
>
> A.    Yes.
>
> . . .
>
> Q.    Why did you not ask for a special instruction based on that argument?
>
> A.    We've – the issue that I raised over at sidebar would be addressed by the Court. I believe that it was appropriately addressed in the instructions.
>
> Q.    Why not ask for a mistrial?
>
> A.    I didn't believe there were any grounds for a mistrial at that point.

(Doc. 15-15, at 14-15).

The state court concluded that trial counsel's decision to address these statements at sidebar was a reasonable trial strategy. As the PCRA court explained:

> It was reasonable trial strategy for trial counsel to address the issue at sidebar instead of objecting during closing argument. In some cases, it is reasonable for a trial attorney to make the determination that addressing a questionable remark in the form of an objection would be detrimental to the defenses' case strategy. "Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections highlight the issue for the jury, and curative instructions always do." Commonwealth v. Koehler, 36 A.3d 121, 146 (Pa. 2012).

> In this case, the inconsistencies between the Defendant's testimony and the video tape evidence captured by his wife, and his remarks which tended to place blame for the animosity between Defendant's family and Victim's could have been made more pronounced to the jury if he were to have objected during closing. Instead, he felt that addressing the instruction the Court planned to read to the jury to potentially avoid highlighting these perceived weaknesses in his case while also ensuring the jury was informed of the Defense's lack of any burden to call witnesses to testify on its behalf was more appropriate and more aligned with Defendant's interests.

Commonwealth v. Levengood, 2022 WL 1265766 at *10; (Doc. 15-16, at 88).

The PCRA court also concluded that the standard jury instructions relied upon by trial counsel were sufficient to eliminate any risk of prejudice resulting from the Commonwealth's comments during closing. On this score, at trial, the jury was instructed as follows:

> Let's first talk first about the presumption of innocence. A fundamental principle of our system of criminal law is that the Defendant is presumed to be innocent. The mere fact he was arrested and charged with crimes is not evidence of his guilt. Furthermore, the Defendant is

presumed to remain innocent throughout the trial unless and until you conclude, based upon careful impartial consideration of the evidence, the Commonwealth has proven him guilty beyond a reasonable doubt of the charges made against him. It is not the Defendant's burden to prove he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the Defendant is guilty of those crimes beyond a reasonable doubt. A person accused of a crime is not required to present evidence or prove anything in his own defense. If the evidence presented fails to meet the Commonwealth's burden, then your verdict must be not guilty. On the other hand, if the evidence does prove beyond a reasonable doubt that the Defendant is guilty of the crimes charged, then your verdict should be guilty.

(Doc. 15-4, at 43-44). The PCRA court concluded:

These instructions given by the Court eliminated the risk of prejudice that could have resulted from the Commonwealth's comments made in closing. Also, it avoided calling the jury's attention to a fact that was a major issue with the Defense's case. Attorney Nigrini made the judgment call to address the matter in a reasonable manner that was in the best interest of his client while also making sure that any prejudice that could have resulted was eliminated.

Given these actions and reasoning of Attorney Nigrini, it appears that Defendant was not prejudiced by trial counsel's failure to object to the Commonwealth's statement. The decision to refrain from objecting during closing was reasonable because there was a clear strategic reason for doing so and trial counsel was not required by Pennsylvania rules to make the objection.

Commonwealth v. Levengood, 2022 WL 1265766 at *11; (Doc. 15-16, at 89-90).

The Pennsylvania Superior Court adopted the trial court's conclusions on this argument and affirmed the denial of his petition. At the outset, we note that, as to the ineffective assistance of counsel claim, the state court did not misapply

Strickland. Indeed, we agree that it was reasonable for trial counsel to bring the inappropriate remarks regarding the testimony of Levengood's wife to the court's attention at sidebar and ensure an appropriate jury instruction would be provided rather than object to the remarks. As the Third Circuit has explained:

> Just because an objection has merit, it does not follow that counsel was incompetent for failing to [make it]. Focusing on a small number of key points may be more persuasive than a shotgun approach. Sometimes, a valid objection might even backfire; object[ing] to [a] prosecutor's remark might draw attention to it.

Zeledjieski v. Superintendent Greene SCI, 833 F. App'x 950, 956 (3d Cir. 2020) (citing Yarborough v. Gentry, 540 U.S. 1, 7, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000) (internal quotations omitted). Given the concerns expressed at the PCRA hearing regarding the reasons Levengood's wife did not testify at trial, it was reasonable for trial counsel to conclude that addressing these remarks at sidebar was the best strategy in minimizing their effect on the jury. Moreover, trial counsel did not just blindly rely upon the standard jury instruction without confirming it would be curative of any prejudice caused by the remarks, but confirmed with the judge at sidebar that such instructions would indeed directly address any prejudice caused by the inappropriate remarks by the prosecution. It was reasonable for trial counsel to conclude no further curative instruction was necessary. Indeed, the decision of how to address these

statements by the prosecution was a matter of trial strategy which is to be entrusted to the professional discretion of counsel. There was no ineffectiveness shown here.

Moreover, the petitioner's argument that the state courts' determinations amount to an unreasonable application of law with regard to any overarching alleged due process violation resulting from prosecutorial misconduct because they failed to properly apply United States Supreme Court precedent in Darden is also meritless. As this court has previously summarized:

> The clearly established federal law concerning prosecutorial misconduct in a closing argument is set forth in Darden v. Wainwright, 477 U.S. 168 (1986). In that case, the United States Supreme Court explained that, on federal habeas corpus review, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." See id. at 181 (citation and internal quotation marks omitted). Instead, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." See id. (citation and internal quotation marks omitted). In answering this question, courts may look to various factors, including, whether the prosecutors' comments were "invited by" or "responsive to" defense arguments, whether any curative instructions were given to the jury, and the weight of the evidence that was presented against the petitioner. See id. at 182. Finally, the appropriate standard on federal habeas corpus review for such a claim "is the narrow one of due process, and not the broad exercise of supervisory power." See id. (citation and internal quotation marks omitted).

Varner v. Houser, No. 1:21-CV-00908, 2024 WL 3204472, at *31 (M.D. Pa. June 26, 2024); see also Morton v. Ricci, 338 F. App'x 182, 185 (3d Cir. 2009). As the Third Circuit has explained, "the reviewing court must examine the prosecutor's

offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In our view, the state court did not misapply the precedent set forth in Darden since the PCRA court correctly concluded that the standard instructions to the jury that the petitioner had no obligation to present evidence or witnesses to prove his innocence were curative of any offensive actions committed by the prosecution in the case with regard to references to the petitioner's wife not testifying. See U.S. v. Ugwu, 539 Fed. Appx. 35, 40 (3d Cir. 2013) (finding court did not abuse its discretion in not providing a specific curative instruction for inappropriate prosecutorial comments where the District Court had instructed the jury that arguments by counsel were not evidence, the Government bore the burden of proof, and Defendants were "not required to present any evidence or produce any witnesses"). Moreover, as discussed above, there was sufficient evidence in the record to support the conviction, including two videos of the incident published to the jury from which they could determine with their own eyes whether the petitioner's actions aligned with the arguments set forth by the parties, regardless of any testimony of Levengood's wife which could have further supported his claims. Accordingly, the petitioner has not shown that the prosecutor's comments regarding

his wife's testimony, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 169.

This evidence, and the curative steps taken by trial counsel, also foreclose relief at the second prong of the Strickland test, since the petitioner has not shown prejudice flowing from these statements made during closing and cross-examination. Quite the contrary, the PCRA court specifically found that "these instructions given by the Court eliminated the risk of prejudice that could have resulted from the Commonwealth's comments made during closing. . . . Given these actions and reasoning of Attorney Nigrini, it appears that Defendant was not prejudiced by trial counsel's failure to object to the Commonwealth's statement." Levengood, 2022 WL 1265766 at *11. We agree. In the absence of any cognizable error by counsel, or prejudice to Levengood's defense, this claim of ineffective assistance of counsel fails.

Simply put, these extensive state court findings are well supported by the evidence, control our evaluation of this claim of ineffective assistance of counsel, and defeat Levengood's contention that his trial counsel fundamentally and prejudicially erred in failing to object to the testimony of the prosecution. Moreover, we find that the evidence was sufficient for a reasonable trier for fact to conclude that Levengood had committed the crimes charged. Accordingly, we will deny his petition.

Finally, we have carefully considered whether Levengood is entitled to a certificate of appealability under 28 U.S.C. § 2253. As the Supreme Court observed "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, (2000). In the instant case Levengood has made no such showing, nor can he. Rather, Levengood's claims are plainly without merit. Therefore, we will decline to issue a certificate of appealability.

## IV. __Conclusion__

Accordingly, for the foregoing reasons, we conclude that the Petition for Writ of Habeas Corpus will be DENIED and that a certificate of appealability will not issue. An appropriate order follows.

Submitted this 17th day of April 2025.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge